CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
AUG 08 2005
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **DOUGLAS R. RATLIFF**, d/b/a **RATLIFF PROPERTIES**, </br>  Plaintiff, </br></br> v. </br></br> **S&ME, Inc.**, </br>  Defendant. | Civil Action No. 1:05cv00020 </br></br> **MEMORANDUM OPINION** </br></br> By: GLEN M. WILLIAMS </br> Senior United States District Judge |

This case is before the court on the defendant's Motion to Dismiss, (Docket Item No. 14) ("the Motion"). The motion was heard before the undersigned on July 6, 2005 (Docket Item No. 20). The court, having been fully briefed and having held oral argument, issues the following opinion and accompanying order.

### *I. Factual Background*

Douglas R. Ratliff, ("Ratliff"), is the owner of a tract of land in Abingdon, Virginia. (Amended Motion for Judgment, (Docket Item No. 13), at 1.) In 1999, Ratliff decided to expand a car wash on his property, and hired Ed Tolliver, ("Tolliver"), as the contractor to build a retaining wall necessary for expansion of the car wash. (Amended Motion for Judgment at 1-2.) Tolliver hired J.L. Jacobs & Associates, ("Jacobs"), as the engineer to design the wall, and Jacobs contracted with defendant S&ME to perform a geotechnical analysis of the soil in preparation for

-1-

construction of the wall. (Amended Motion for Judgment at 2; Proposal for Geotechnical Exploration at 1.)

S&ME performed the geotechnical analysis, and, based on the information provided to Jacobs by S&ME, ("the report"), Jacobs designed the retaining wall. (Defendant's Memorandum in Support of Its Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted, ("Defendant's Brief"), (Docket Item No. 16), at 2.) On April 5, 2001, a portion of the wall collapsed, and Ratliff was forced to "incur substantial expense to stabilize what remained of the wall." (Amended Motion for Judgment at 3.)

Ratliff alleges that the report failed to meet generally accepted industry standards and was deficient in several ways, including "(1) failure to recognize or address the existence of the future building surcharge load; (2) failure to address the use or exclusion of highly plastic clay backfill and the necessary construction requirements associated therewith if it were to be used; and (3) failure to address the effects on the future building construction of settlement behind the wall in the reinforced zone or lateral displacement of the wall." (Amended Motion for Judgment at 3.)

Ratliff's first count is one for breach of contract. (Amended Motion for Judgment at 3.) Ratliff alleges that he was an intended third-party beneficiary of the contract between Jacobs and S&ME, and that S&ME breached the contract by "failing to do a complete and proper geotechnical analysis and failing to properly address" the alleged ways in which the report was deficient. (Amended Motion for

-2-

Judgment at 4.) Ratliff, thus, alleged that S&ME's breach of the contract was the proximate cause of the collapse of the wall and that Ratliff has and will continue to suffer substantial damages. (Amended Motion for Judgment at 4.)

Ratliff's second count is for professional negligence, in that he alleges that S&ME had a duty to Ratliff, as the owner of the property on which the geotechnical analysis was performed, to conduct a "complete and proper geotechnical analysis of the [p]roperty." (Amended Motion for Judgment at 4.) Ratliff alleges that S&ME breached this duty when it did not properly address the alleged problems with the geotechnical analysis because in not addressing these problems it failed to meet accepted industry standards in rendering its services. (Amended Motion for Judgment at 4-5.) Ratliff alleges that S&ME's professional negligence was the proximate cause of the wall falling down, and as such, S&ME is liable for damages. (Amended Motion for Judgment at 5.)

Ratliff filed suit against S&ME in Washington County Circuit Court on September 29, 2004, seeking $2,500,000.00 and pre-judgment interest and costs. (Motion for Judgment, (Docket Item No. 13), at 5.) Ratliff filed an Amended Motion for Judgment on March 2, 2005, and S&ME filed a demurrer on March 22, 2005. (Docket Item No. 13.) On March 23, 2005, the case was removed to this court. (Docket Item No. 1.) S&ME filed its Motion to Dismiss on May 6, 2005, (Docket Item No. 14), to which Ratliff responded on May 20, 2005 (Docket Item No. 17).

## II. Standard of Review

When considering such a motion to dismiss, a court may grant the motion only if "'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim.'" *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996) (en banc). For the purposes of a motion to dismiss, the factual allegations, but not the legal conclusions, of the complaint are deemed admitted, and are construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Newport News Shipbuilding & Dry Dock Co. v. Schauffler*, 303 U.S. 54, 57 (1938). However, mere legal conclusions couched as factual allegations need not be accepted as true. *Assa'ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989) (citing *Papasan v. Allain* 478 U.S. 265, 286 (1986)). Also, the court must construe the facts alleged in the complaint in the light most favorable to the plaintiff and must assume that the factual allegations are true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court may not dismiss a complaint unless the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

### *III. Analysis*

### A. Breach of Contract Claim

In its brief, S&ME argues that Ratliff failed to state a cause of action for breach of contract because Ratliff, on the face of the contract, is not a third-party beneficiary. (Defendant's Brief at 3-5.) Ratliff argues that it has sufficiently pled its status as a third-party beneficiary. (Plaintiff's Memorandum of Law in Opposition to S&ME,

-4-

Inc's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted, ("Plaintiff's Brief"), (Docket Item No. 17), at 2.) Specifically, Ratliff argued that the court should look at the entire record in determining whether Ratliff is a third-party beneficiary, not just the contract. (Plaintiff's Brief at 4 ("The Virginia Supreme Court specifically rejected this 'four corners' approach in *Ward v. Ernst & Young*, 435 S.E.2d 628 (Va. 1993)").) Ratliff then argued that looking at all the evidence, in the light most favorable to him, he has sufficiently pled his third-party beneficiary status. (Plaintiff's Brief at 5.)

In its reply brief, S&ME continued to argue that the court needed only to look at the contract in order to determine whether Ratliff was a third-party beneficiary of the contract, distinguishing *Ward* by arguing that the Virginia Supreme Court looked outside of the contract due to "unique facts." (Defendant's Memorandum in Reply to Plaintiff's Memorandum of Law in Opposition to S&ME's Motion to Dismiss, ("Defendant's Reply Brief"), (Docket Item No. 18), at 3.) Thus, an examination of Virginia case law is necessary to see if *Ward* is applicable only to its facts.

*Ward* involved a lawsuit where the sole shareholder of a corporation sued its accounting firm, Ernst & Young, alleging breach of contract and professional negligence. *Ward*, 435 S.E.2d at 630. Specifically, HAZCO International, Inc., ("HAZCO"), a chemical waste corporation of which Ward was the sole shareholder, entered into an agreement with J.H. Whitney & Company, ("Whitney"), to sell Whitney a portion of Ward's stock and certain HAZCO treasury stock. *Ward*, 435 S.E.2d at 630. As a condition of the contract between HAZCO and Whitney, HAZCO contracted with Ernst & Young to perform an audit of HAZCO's financial posture for

the year ending December 31, 1986. *Ward*, 435 S.E.2d at 630. Ernst & Young performed the audit and delivered its report dated July 24, 1987. *Ward*, 435 S.E.2d at 629. In compiling the report, it was necessary for Ernst & Young to create and apply a formula to calculate deferred revenues because "HAZCO 'often obtains significant deposits from customers at the time of contract execution for services to be rendered in the future.'" *Ward*, 435 S.E.2d at 629 (quoting from the audit report).

After the sale to Whitney, HAZCO entered into negotiations with Chemical Waste Management, Inc., ("Chem Waste"), to sell the remainder of Ward's stock holdings in HAZCO. *Ward*, 435 S.E.2d at 629. In preparation for the deal, Ernst & Young helped Ward prepare HAZCO's balance sheets and income statements, including furnishing Ward with a worksheet employing the same deferred-revenue formula it had devised for the 1986 audit. *Ward*, 435 S.E.2d at 630.

Ward signed a letter of intent to sell all of the HAZCO stock to Chem Waste in December of 1987, and delivered to Chem Waste copies of the 1986 audit report and the financial papers reviewed by Ernst and Young. *Ward*, 435 S.E.2d at 630. A formal stock purchase agreement between Ward and Chem Waste was completed on January 26, 1988. *Ward*, 435 S.E.2d at 630.

> In that agreement, Ward warranted that the papers he had delivered "present fairly the financial position of the COMPANY at each of the said balance sheet dates and the results of its operations for each of the said periods covered, and they have been prepared in conformity with generally accepted accounting principles applied on a consistent basis . . . ." Ward covenanted to "indemnify and hold the PURCHASER harmless" for any breach of that warranty and to deposit one million

Case 1:05-cv-00020-GMW-PMS Document 22 Filed 08/08/05 Page 6 of 17 Pageid#: 120

dollars of the purchase price in an escrow account "for the purpose of providing a fund from which ... the Seller's obligations to indemnify the Purchaser are to be satisfied."

After the parties had closed on the agreement, Chem Waste discovered "discrepancies in pre-acquisition account balances resulting in an overstatement of assets and an understatement of liabilities" and made a claim against the escrow deposit. Ward conducted an independent evaluation of the claim, acknowledged that accounting errors had accorded his stock an inflated value, and authorized the escrow agent to pay Chem Waste $500,000 from the account, including "$345,499 for . . . Deferred Income items."

*Ward*, 435 S.E.2d at 630. Ward filed suit against Ernst & Young, claiming damages in the amount of $600,000 for breach of contract and professional negligence. *Ward*, 435 S.E.2d at 630. After Ward's claims were dismissed, Ward filed an amended complaint alleging that he was a third-party beneficiary of the contract between HAZCO and Ernst & Young. *Ward*, 435 S.E.2d at 630. At the conclusion of Ward's evidence at trial, the trial court granted summary judgment for Ernst & Young because there was "'no intention in either oral [statements] or written documents to benefit specifically Mr. Ward as a third-party beneficiary.'" *Ward*, 435 S.E.2d at 630 (quoting the trial court).

In evaluating Ernst & Young's argument that there was nothing in the contract itself evidencing an intent to benefit Ward, the Virginia Supreme Court "look[ed] at the entire record . . . ." *Ward*, 435 S.E.2d at 635. The Virginia Supreme Court evaluated the entire record, including the history of the initial contract between HAZCO and Ernst & Young, HAZCO's later dealings with Ernst & Young in connection with the deal with Chem Waste, and various meetings and telephone conversations between HAZCO, Chem Waste and Ernst & Young. *Ward*, 435 S.E.2d

Case 1:05-cv-00020-GMW-PMS   Document 22   Filed 08/08/05   Page 7 of 17   Pageid#: 121

at 635. The court concluded that "the subject of the sale to Chem Waste was the stock, not the assets of the corporation. As the sole owner of HAZCO stock, Ward was the primary beneficiary of the benefits to be conferred upon execution for the HAZCO-Chem Waste contract." *Ward*, 435 S.E.2d at 635. Thus, the court concluded, that there was enough evidence to preclude the trial court's grant of summary judgment to Ernst & Young on the issue of Ward's third-party beneficiary status, reversing the trial court's decision and remanding for a new trial. *Ward*, 435 S.E.2d at 636.

*Ward*, thus, stands for the proposition that a court *may* look outside the four corners of a contract to determine whether someone is a third-party beneficiary of a contract. *Ward*, 435 S.E.2d at 635 n.4. *Ward*, however, does not provide guidance as to *when* a court should look outside of a contract to determine third-party beneficiary status. The Virginia Supreme Court addressed this issue in *Aetna Cas. and Sur. Co. v. Fireguard Corp.*, 455 S.E.2d 229 (Va. 1995). This case involved an insurer, Aetna, as a subrogee of its insureds and owner of a building project involving construction of an apartment building, that brought suit against a subcontractor, alleging that the subcontractor had agreed to indemnify the owner of the building project in a contract between subcontractor and general contractor. *Aetna*, 455 S.E.2d at 229-230. The trial court granted Fireguard's motion for summary judgment based on its conclusion that Aetna, as subrogee of the owner of the property, was not a third-party beneficiary to a contract between Fireguard and the general contractor. *Aetna*, 455 S.E.2d at 230.

On appeal, Aetna argued both that it was a third-party beneficiary on the face
-8-

of the contract, and that "'at worst'" the contract was ambiguous and Aetna should have been allowed to produce evidence on the issue. *Aetna*, 455 S.E.2d at 231. In ascertaining whether the trial court should have looked outside the terms of the contract to decide whether Aetna was a third-party beneficiary, the Virginia Supreme Court held:

> When a contract is complete on its face and is plain and unambiguous in its terms, a court is not free to search for its meaning beyond the contract itself. When a contract is ambiguous, however, a court should resort to parol evidence to ascertain the true intention of the parties. An "ambiguity" is defined as "'the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time.'"
>
> In the present case, the contracting parties clearly and definitely intended to confer a benefit upon the "Owner" of the project. The Contract, however, is unclear and ambiguous with respect to the identification of the "Owner." Clause FIRST (d) indicates that National was the owner. Exhibit 5 to the Contract, on the other hand, suggests that Quincy was the owner.
>
> From the facts before the trial court, it is reasonable to infer that Quincy, not National, was the owner upon whom the contracting parties intended to confer a benefit. Indeed, Cranshaw's affidavit states that Quincy was the owner and that National, whose name was erroneously placed in the Contract, was merely the original sponsor and developer of the project.

*Aetna*, 455 S.E.2d at 232 (citations omitted). Thus, the rule in Virginia is that the court shall not look outside the contract itself unless the court determines that the contract is ambiguous.

-9-

In its brief, Ratliff alleges the following ambiguities: (1) Ratliff's relationship to S&ME is that Ratliff hired a contractor to build the wall, who hired an engineer to design the wall, who hired S&ME to do the geotechnical analysis; (2) S&ME was "informed . . . that the geotechnical services they would perform would be 'for the subject [Soft Cloth Auto Wash] in Abingdon, VA'"; (3) S&ME indicated in their written proposal for the geotechnical analysis that "their services would be performed at the subject site"; (4) Ratliff was billed separately for the services performed by S&ME; and (5) there were references to the property owned by Ratliff in the documents exchanged by the parties to the contract. (Plaintiff's Brief at 4-5.) However, none of these alleged ambiguities are ambiguities contained in the contract; rather, they are ambiguities contained in the record outside of the contract.

Further, the contract itself does not appear to be ambiguous. The contract refers to "Consultant," (S&ME), and "Client," (Jacobs). (Agreement for Services, (Docket Item No. 13 at 23-24) at 1-2.) Unlike the case in *Aetna*, the contract does not refer to the owner of the property. While mention is made of the property on which the geotechnical analysis was to be performed, it is in the context of a contract provision for potential damage of the subject property due to the use of heavy equipment, disclosure of utilities and hidden man-made objects, and identification of where the work was to be performed. (Proposal for Geotechnical Exploration, (Docket Item No. 13 at 19) at 1; Agreement for Services at 1.) Ratliff's name appears nowhere in the contract, nor does the contract mention the owner of the land at all. S&ME intended to confer a benefit on Jacobs, as indicated by the contract. Ratliff has not pled facts evidencing ambiguity in the contract, which would allow this court to look outside the contract. Thus, since the contracting parties clearly and unambiguously did not

Case 1:05-cv-00020-GMW-PMS   Document 22   Filed 08/08/05   Page 10 of 17   Pageid#: 124

intend to confer a benefit on Ratliff, S&ME's Motion to Dismiss Ratliff's breach of contract claim will be granted.

### B. Professional Negligence Claim

In its motion to dismiss, S&ME argues that the economic loss rule also prevents recovery by Ratliff. (Defendant's Brief at 5.) Ratliff argues that third-party beneficiary status would confer upon him privity with S&ME, thus, allowing the recovery of economic losses on a negligence theory. (Plaintiff's Brief at 7.) This argument is moot, however, because Ratliff is not a third-party beneficiary to the contract between Jacobs and S&ME.

Ratliff argues alternatively that the loss suffered in the case is not economic loss, but rather property damage, thereby taking it out of the economic loss rule pursuant to Virginia Code Annotated § 8.01-223 (Michie 2000). Specifically, Ratliff argues that it has pled damages to personal property and real estate and, as such, he has stated a claim upon which relief could be granted, thereby defeating S&ME's motion to dismiss. (Plaintiff's Brief at 8-9.) S&ME argues that Ratliff has not sufficiently pled property damage. (Defendant's Reply Brief at 4-5.) S&ME contends that in order for Ratliff to allege property damage separate from economic loss, Ratliff must make factually specific allegations of property damage in order to survive a motion to dismiss. (Defendant's Reply Brief at 4-5.) As Ratliff has not done so, S&ME argues that the Amended Motion for Judgment should be dismissed.

Ratliff argues that his allegations of "damages to personal property and real

-11-

Case 1:05-cv-00020-GMW-PMS   Document 22   Filed 08/08/05   Page 11 of 17   Pageid#: 125

estate" and that the wall "continues to deteriorate and may pose a risk to nearby people and property" sufficiently plea damages to property as required by Virginia Code Annotated § 8.01-223 (Michie 2000). The issue, thus, becomes whether those allegations are sufficient to state a claim for damage to property resulting from negligence.

As noted by both parties, the only Virginia Supreme Court case on point appears to be *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988). In *Sensenbrenner*, the plaintiffs contracted with a general contractor to build a new home and an enclosed swimming pool. *Sensenbrenner*, 236 Va. at 421, 374 S.E.2d at 56. The general contractor, in turn, contracted with the defendant, an architect, to design the home and pool. *Sensenbrenner*, 236 Va. at 421, 374 S.E.2d at 56. After the defendant submitted its designs, the general contractor contracted with a subcontractor to build the pool. *Sensenbrenner*, 236 Va. at 422, 374 S.E.2d at 56. The work was completed, and the house was conveyed to the plaintiffs. *Sensenbrenner*, 236 Va. at 422, 374 S.E.2d at 56. However, the plaintiffs sued the defendant, alleging that the defendant's negligent design and supervision caused the pool, "which was built on fill rather than on natural soils [to settle], causing water pipes to break; that water effusing from the broken pipes . . . eroded the soil under the pool and under a part of the foundation of the house next to the pool; and that the bottom of the pool and a part of the foundation of the house . . . cracked as a result of the erosion." *Sensenbrenner*, 236 Va. at 422, 374 S.E.2d at 56.

The plaintiffs filed suit against the defendants in the United States District Court for the Eastern District of Virginia, and upon cross 12(b)(6) motions to dismiss, the

district court dismissed the complaints for failure to state a claim upon which relief could be granted. *Sensenbrenner*, 236 Va. at 422, 374 S.E.2d at 56. At issue in the cross motions to dismiss was whether the damage to the house and pool was damage to "property" envisioned by Virginia Code Annotated § 8.01-223 (Michie 2000). *Sensenbrenner*, 236 Va. at 422, 374 S.E.2d at 56. Upon appeal, the Fourth Circuit certified two questions of law to the Virginia Supreme Court, of which the first is relevant to the case at bar:

> 1. Does Virginia law permit recovery by a home purchaser against the pool installer and the architect for damages to the indoor swimming pool and to the foundation of the house caused by a leaking pool, where the pool installer and the architect were not in privity of contract with the home purchaser, on the basis that the damages were injuries to property and not economic losses?

*Sensenbrenner*, 236 Va. at 421, 374 S.E.2d at 56. The Virginia Supreme Court, thus, had to determine whether "property damage," under section 8.01-223, included the type of damage suffered by the Sensenbrenners.

Citing *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986)[1] and *Blake Construction Co. v. Alley*, 233 Va. 31, 34, 353 S.E.2d 724, 726 (1987),[2] the

---

[1] In *East River*, a unanimous Supreme Court held that a defective product that damages itself is not damage to other property. "In the traditional 'property damage' cases, the defective product damages other property." *East River*, 476 U.S. at 866. The Court further explained that where a product that was designed defectively damages itself, "the injury suffered — the failure of the product to function properly — is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *East River*, 476 U.S. at 866.

[2] In *Blake Construction Co.*, the Virginia Supreme Court held that Virginia Code Annotated § 8.01-223 (Michie 2000) was to be strictly construed since it is a statute "in derogation of the common law." *Blake Construction Co.*, 233 Va. at 34, 353 S.E.2d at 726

-13-

court held that the plaintiffs contracted with the defendants for a "package," which included the "land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure." *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. The court held that the plaintiffs were alleging that the package was defective, in that "one or more of its component parts was sufficiently substandard as to cause damage to other parts." *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. Thus, concluded the court, "[t]he effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair." *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. The court concluded this was "purely economic loss, for which the law of contracts provides the sole remedy." *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58.

Emphasizing its point, the court stated that "[r]ecovery in tort is available only when there is a breach of a duty 'to take care for the *safety* of the person or property of another.'" *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58 (citing *Blake*, 233 Va. at 34, 353 S.E.2d at 726). The court concluded that the contractor and the defendant-architect did not assume such a duty in contract, and the plaintiffs' complaint did not allege facts showing a breach of any such duty imposed by law, and, thus, answered the first certified question in the negative. *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58.

Ratliff attempts to distinguish *Sensenbrenner* by citing to *Titmus Optical, Inc. v. Curd*, 60 Va. Cir. 461, 1999 Va. Cir. LEXIS 770 (Va. Cir. Ct. 2000). *Titmus*

(quoting *C. & O. Railway v. Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965)).

-14-

involved an action against two subcontractors for alleged defective design and construction of the plaintiff's office and manufacturing facility, which was damaged after the coal ash fill used in the construction of the facility continued to expand after completion of the facility, damaging the building. *Titmus*, 60 Va. Cir. at 461, 464. Defendants filed a demurrer, arguing that plaintiff's claims were barred by the economic loss rule. *Titmus*, 60 Va. Cir. at 461. The court initially sustained the demurrer, holding that the case was analogous to *Sensenbrenner*, but gave the plaintiff leave to file an amended motion for judgment. *Titmus*, 60 Va. Cir. at 464. The plaintiff filed an amended motion for judgment which "specifically alleg[ed] injury to other property and persons." *Titmus*, 60 Va. Cir. at 465. The defendants filed a demurrer to the amended motion for judgment, and the court denied the defendants' demurrer, holding that the amended motion for judgment stated a claim "under the exception noted in *Sensenbrenner*" due to the specifically pled injury to other property and persons. *Titmus*, 60 Va. Cir. at 465.

As noted above, *Sensenbrenner* held that a bargained-for "package" that later turns out to be defective is not property as envisioned by Virginia Code Annotated § 8.01-223 (Michie 2000). *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. In the case at bar, the "package" bargained for by Ratliff is the retaining wall itself. This is reflected both in Ratliff's contract with Tolliver and S&ME's contract with Jacobs. (Exhibit A to Defendant's Brief, (Docket Item No. 15); Exhibit A to Plaintiff's Brief (Docket Item No. 17).) In his amended motion for judgment, Ratliff has asked for "damages including expenses to clean, inspect, and repair or replace the Wall, lost profits, and damages to personal property and real estate." (Amended Motion for Judgment at 5.) The economic loss rule clearly applies to lost profits, which do not

-15-

come under the exceptions in section 8.01-223. Nor may Ratliff collect damage to the wall itself, since the wall was the "package" as envisioned in *Sensenbrenner*. *See Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58.

However, Ratliff may collect "damages for injury to . . . property resulting from negligence . . . ." VA. CODE ANN. § 8.01-223 (Michie 2000). This includes diminution in the value of the real property on which the wall rests. Ratliff did not specifically ask for damages for diminution in the value of this real property. The *Titmus* court overruled a demurrer filed by the defendant because the plaintiff "specifically [pled] injury to other property and persons." *Titmus*, 60 Va. Cir. at 465. The *Titmus* court, though, did not indicate how the plaintiff specifically pled damage to other property and persons. *See Titmus*, 60 Va. Cir. at 465.

The Federal Rules of Civil Procedure have established a "simplified notice pleading standard" through Rule 8(a), where a plaintiff is merely required to give a statement that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" FED. R. CIV. PRO. 8(a); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Fourth Circuit has recently emphasized that "a complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim. It need only 'allege facts sufficient to state elements' of the claim." *Chao v. Rivendell Woods, Inc.*, --- F.3d ---, 2005 WL 1669389 at *6 (4th Cir. 2005). Thus, in asking for " damages to personal property and real estate," (Amended Motion for Judgment at 5), Ratliff has plead sufficient facts to state a claim for professional negligence. While he cannot collect lost profits or damage to the wall due to the economic loss

Case 1:05-cv-00020-GMW-PMS   Document 22   Filed 08/08/05   Page 16 of 17   Pageid#: 130

rule and *Sensenbrenner*'s interpretation of "property" in Virginia Code Annotated § 8.01-223 (Michie 2000), Ratliff has pled sufficient facts to ask for diminution in value of his real property due to S&ME's alleged negligence.

## *IV. Conclusion*

For the reasons discussed above, the court finds that Ratliff has failed to plead sufficient facts to support its claim to be a third-party beneficiary to the contract between S&ME and Jacobs, as well as facts sufficient to support its professional negligence claim for lost profits or for damage to the retaining wall. The court also finds that Ratliff has sufficiently pled facts to support its negligence claim for diminution in value to the real property on which the wall sits. Therefore, S&ME's Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

An appropriate order will be entered.

DATED: This 8th day of August, 2005.

/s/ Glen M. Williams

GLEN M. WILLIAMS
Senior United States District Judge